UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

| | |
|---|---|
| B.G., individually, and on behalf of M.G., a minor child with a disability,<br><br>                                          Plaintiffs,<br><br>                    -against-<br><br>The Board of Education of the City School District of the City of New York; the New York City Department of Education a/k/a New York City Public Schools; the City of New York; and Chancellor Melissa Avilés-Ramos, in her official capacity,<br><br>                                          Defendants. | ECF CASE<br>COMPLAINT<br>20___ Civ. _____ (___) |

-------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      Plaintiff B.G., individually and on behalf of her minor son M.G., brings this action pursuant to the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEA");[1] the implementing federal regulations, 34 C.F.R. Part 300; Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 794 *et seq.*; 42 U.S.C. § 1983; New York Education Law §§ 3602-c and 4404; and other applicable state and federal law, seeking reversal of the Findings of Fact and Decision ("FOFD") of Impartial Hearing Officer Joshua Pal dated December 20, 2024, Case No. 273143 (hereafter

---

[1] The Individuals with Disabilities Education Improvement Act amended and restated the Individuals with Disabilities Education Act, which was known by the acronym, "IDEA." The amended statute is sometimes referred to as the "IDEIA," particularly when there is a focus upon a provision of the IDEIA that amended the IDEA. In this Complaint, Plaintiffs use the original acronym, "IDEA" throughout.

"FOFD post remand") (see Ex. 1),[2] and the State Review Officer ("SRO") Decision No. 25-062 issued thereafter (see Ex. 2).

2.      M.G. is a school-age child with a disability who is entitled to receive special education and related services at public expense under the IDEA and New York Education Law.[3] For the 2023–2024 school year, M.G. was a dually-enrolled nonpublic school student entitled to a free appropriate public education ("FAPE"), equitable services pursuant to the IDEA, New York Education Law § 3602-c, and an Individualized Education Services Program ("IESP") developed by the New York City Department of Education ("DOE").

3.      The DOE failed to implement M.G.'s mandated services for the 2023–2024 school year, thereby failing to offer or provide equitable services as required by state and federal law. As a result, B.G. was forced to secure Special Education Teacher Support Services ("SETSS") from a private provider to ensure that M.G. received instruction reasonably calculated to address his documented disabilities and needs.

4.      Despite the DOE's undisputed failure to provide equitable services, both the IHO and SRO incorrectly applied the *Burlington/Carter* framework to determine the issues, improperly shifted the burden of production and persuasion to the parent, and wrongly concluded that the parent failed to meet her burden under Prong II of the *Burlington/Carter* framework (even if it did apply, which it did not), ignoring substantial unrebutted evidence in the record - including the very exhibits whose improper exclusion caused the SRO's earlier remand ordering their admission. See Transcript of Dec. 4, 2024 Hearing (IHO admitting Parent Exhibits H & I pursuant to the SRO remand).

---

[2] Each Exhibit ("Ex.") is appended to the Complaint, and each is wholly incorporated herein.
[3] *See* 34 C.F.R. § 300.8[c][11]; 8 N.Y.C.R.R. § 200.1[zz][11]

5.      The IHO committed errors of law, fact, and procedure, including:

a. applying an incorrect legal standard and then requiring parents to replicate the exact IESP mandate;

b. imposing impermissible heightened proof requirements at Prong II, which did not apply;

c. making findings contradicted by the record;

d. importing "equities" considerations into the Prong II analysis;

e. rejecting the appropriateness of services based on contract technicalities irrelevant under controlling precedent; and

f. disregarding binding SRO authority on unilateral placements, adequacy of SETSS delivery, and parent obligations under § 3602-c.

6.      The SRO's decision compounded these errors by adopting and endorsing the IHO's legally erroneous standards, mischaracterizing the evidentiary record, and failing to apply controlling IDEA jurisprudence, including multiple SRO decisions clarifying that parents of dually-enrolled students are not held to the same standards as districts and are entitled to "flexibility" in securing private services where the DOE fails to provide equitable services.

7.      Plaintiff brings this action as an aggrieved party under 20 U.S.C. § 1415(i)(2)(A), seeking reversal of the administrative decisions, an order finding the unilateral SETSS services appropriate, funding of those services at the provider's contracted rate, and any compensatory equitable services missed as a result of the DOE's failure to implement the Individualized Education Services Program ("IESP").

8.     Plaintiff also seeks attorneys' fees and costs for the federal court proceeding and

coss and expenses for the administrative proceedings pursuant to 20 U.S.C. § 1415(i)(3),

and any other relief the Court deems just.

## JURISDICTION AND VENUE

9.     This action is brought pursuant to the Individuals with Disabilities Education

Improvement Act ("IDEA"), 20 U.S.C. § 1415(i)(2)(A), seeking judicial review and

reversal of the Findings of Fact and Decision ("FOFD") dated December 20, 2024 issued

by Impartial Hearing Officer ("IHO") Joshua Pal 273143 FOFD post remand and

the State Review Officer ("SRO") Decision No. 25-062, which constitutes the final

administrative decision of the New York State Education Department.

10.     This Court has jurisdiction over this action pursuant to 20 U.S.C. § 1415(i)(2)(A),

which provides that any party aggrieved by the findings and decision made under the §

1415 administrative process may bring a civil action in any state court of competent

jurisdiction or in a district court of the United States without regard to the amount in

controversy.

11.     This Court also has subject-matter jurisdiction under 28 U.S.C. § 1331, because

this action arises under federal law, including the IDEA, under 28 U.S.C. §1343(a) in that

claims are asserted under laws providing for the protection of civil rights, and under 20

U.S.C. §1415, Title II of the ADA, 42 U.S.C. § 12133, 42 U.S.C. §1983, and 29 U.S.C.

§794*, et. seq*.

12.     This Court has the authority to grant declaratory and injunctive relief pursuant

to 28 U.S.C. §§ 2201–2202, and supplemental jurisdiction over Plaintiff's state-law

claims pursuant to 28 U.S.C. § 1367 and to the extent those state law claims are incorporated by reference into the IDEA, they are enforceable under 20 U.S.C. §1415.

13.    Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(2) because Defendants are located within this District and a substantial part of the events or omissions giving rise to this action occurred within this District, including the development of M.G.'s IESP, the failure to implement his mandated equitable services, the administrative due process proceedings, and the decisions being appealed.

14.    Under New York law, disputes concerning IESPs and services for dually-enrolled students are adjudicated through the same two-tier administrative system that governs IDEA IEP disputes under 20 U.S.C. § 1415.

15.    Because Plaintiff fully exhausted all administrative procedures mandated by 20 U.S.C. § 1415(f)–(h) and New York Education Law § 4404, Plaintiff is a "party aggrieved" under § 1415(i)(2)(A), and this matter is properly before this Court.

## STATUTORY BASIS & SYSTEMIC VIOLATIONS

16.    This action arises under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, which guarantees eligible students with disabilities the substantive right to a free appropriate public education ("FAPE") or, in the case of students placed by their parents in nonpublic schools, the right to receive equitable services pursuant to 20 U.S.C. § 1412(a)(10)(A) and New York Education Law § 3602-c.

17.    Under § 3602-c, eligible dually-enrolled students are entitled to equitable SETSS and related services as mandated in an IESP, and the school district is required to implement such services directly, or failing that, to fund services obtained by the parent.

18.    The New York City Department of Education ("DOE"), the Board of Education ("BOE"), the Chancellor, and the City of New York (collectively "Defendants") have engaged in systemic, longstanding, and well-documented failures to implement mandated equitable services for dually-enrolled students under § 3602-c, in violation of the IDEA and the Fourteenth Amendment.

19.    These systemic failures constitute policies, practices, and customs that result in the widespread denial of educational rights, including but not limited to:

    a.    Systematic non-implementation of IESPs, including failure to assign SETSS providers to thousands of eligible students;

    b.    Chronic under-staffing and deliberate failure to maintain provider pools, despite knowing that mandated services cannot be fulfilled;

    c.    Regular use of procedural defaults to deny relief even where the DOE did not appear, respond, or present evidence;

    d.    Consistent misuse of Prong II to impose a heightened burden requiring parents to replicate the exact IESP mandate—a legal standard repeatedly rejected by federal courts and SRO decisions;

    e.    Routine exclusion of relevant evidence and improper narrowing of records, as occurred in this case when Parent Exhibits H and I were unlawfully excluded and then misinterpreted even after the SRO remanded for their admission;

    f.    Systemic failure to comply with pendency obligations under 20 U.S.C. § 1415(j);

6

g.   A pattern of unlawful FOFDs issued by IHOs applying legally incorrect standards, followed by SRO affirmances that replicate those errors;

h.   Chronic failure to communicate with parents, respond to notices, or implement recommended services;

i.   A deliberate policy of denying equitable services as a means of reducing cost rather than complying with federal law.

20.   These systemic errors are not isolated. They are well-documented in litigation across this District and State, including frequent findings by SROs that the DOE has systemically failed to implement IESPs for dually-enrolled students.

21.   Defendants' systemic failures and policies were a direct, moving force behind the violations suffered by M.G. in this matter, including the DOE's admitted failure to implement the IESP, the IHO's legally erroneous FOFD, and the SRO's legally unsound affirmance.

22.   Accordingly, Plaintiff brings a separate and independent cause of action under 42 U.S.C. § 1983 for deprivation of federal and state constitutional and statutory rights under color of state law.

23.   In compliance with 20 U.S.C. § 1412(a)(10)(A), New York enacted Education Law § 3602-c(2)(b) to ensure that parentally placed students with disabilities receive special education services on an "equitable basis."

24.   Further, New York enacted Education Law § 3602-c, which requires Committees on Special Education to develop an Individualized Education Services Program ("IESP") "in the same manner and with the same contents" as an IEP. N.Y. Educ. Law § 3602-c(2)(b)(1).

25.        Section 3602-c explicitly incorporates the IDEA's impartial hearing and State Review Officer ("SRO") review process, ensuring that IESP disputes are governed by the same due process system as IEP disputes. *See* N.Y. Educ. Law §§ 3602-c(2)(b)(1), 4404.

26.        The IESP procedure is therefore not merely a creature of state law, it is the mechanism by which New York discharges its federal obligations under IDEA and makes disputes over IESP services disputes necessarily those "arising under" the IDEA.

27.        IESP determinations are not merely state-law claims, but they are IDEA claims implemented through state law, and violations of state education law § 3602-c constitute violations of the IDEA.

28.        Accordingly, disputes over IESPs are necessarily disputes "brought under" the IDEA within the meaning of 20 U.S.C. § 1415(i)(2)(A).

29.        The IDEA further includes a "pendency" or "stay-put" provision that provides that, while the administrative and judicial proceedings are pending and unless the school district and the parents agree otherwise, a child must remain, at public expense, in his or her then-current educational placement. *See* 20 U.S.C. § 1415(j).

30.        A prior unappealed IHO or IESP decision may establish a student's current educational placement for purposes of pendency.

31.    Tuition relief is not barred because a private program chosen by a parent does not meet certain state educational standards or is not on a state's specific list of approved private schools. *See Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, at 14-15 (1993).

**PARTIES**

32.    Plaintiff B.G. is the biological parent and legal guardian of M.G., a minor child with a disability who resides in New York City.

33.    B.G. brings this action individually and on behalf of her son pursuant to inter alia the IDEA, 20 U.S.C. § 1415(i)(2)(A), Section 504 of the Rehabilitation Act, 42 U.S.C. § 1983, and New York Education Law §§ 3602-c and 4404.

34.    M.G. is a school-age child who has been found eligible to receive special education services as a student with a disability under federal and state law.

35.    M.G. also is a qualified individual with a physical and mental impairment that substantially limits one or more major life activities under the meaning of Section 504 and the ADA.

36.    M.G. is entitled to receive special education and related services from Defendants through an Individualized Education Services Program ("IESP") developed by the New York City Department of Education for the 2023–2024 school year.

37.    M.G.'s disability, educational needs, and eligibility for services are not in dispute.

38.    Plaintiffs sue under pseudonyms using initials to preserve the privacy and confidentiality of sensitive medical, educational, and disability-related information, which would otherwise be protected under HIPAA, the IDEA, and the Family Educational Rights and Privacy Act of 1974 ("FERPA").

39.    Plaintiff parents also sue under a pseudonym using initials because disclosure of their identities would necessarily disclose the identity of Plaintiff student.

40.    M.G. lacks the capacity to bring suit on his own without a representative and/or next friend.

41.     Defendant THE BOARD OF EDUCATION OF THE CITY SCHOOL

DISTRICT OF THE CITY OF NEW YORK ("BOE") is a corporate body organized

under New York Education Law §§ 2550–2590-h. It is responsible for the general

management, operation, and control of the New York City public schools.

42.     The BOE is a "local educational agency" ("LEA") within the meaning of the

IDEA.

43.     The BOE maintains its principal offices at 52 Chambers Street, New York, New

York.

44.     Pursuant to various provisions of law, including, *inter alia*, Sections 2554 and

2590-g of the New York Education Law, the BOE is charged with several responsibilities

including administering and managing the educational affairs of the City School District

and serving as the employer of all staff, educators, and principals hired to serve, teach in,

and manage the City School District.

45.     Under New York Education Law § 2590-g, "[t]he city board shall advise the

chancellor on matters of policy affecting the welfare of the city school district and its

pupils. Except as otherwise provided by law, the *board shall exercise no executive power

and perform no executive or administrative functions*."

46.     The powers of the BOE are expressly enumerated under New York State law.

47.     The BOE changed its name to "the Panel for Educational Policy" ("PEP").

Specifically, the BOE bylaws provide, in part, as follows: "The fifteen-member body

designated as the Board of Education of the City School District of the City of New York

in New York Education Law Section 2590-b shall be known as the Panel for Educational

Policy ("PEP"). The PEP is a part of the governance structure responsible for the City

School District of the City of New York, subject to the laws of the State of New York

and the regulations of the State Department of Education. Other parts of the structure

include the Chancellor, superintendents, community and citywide education councils,

principals, and school leadership teams. Together this structure shall be designated as the

Department of Education of the City of New York."[4]

48.     Defendant THE NEW YORK CITY DEPARTMENT OF EDUCATION

("DOE"), also known as New York City Public Schools, is an administrative arm of the

BOE created through BOE bylaws.

49.     It is responsible for providing services to students with disabilities, developing

IESPs and IEPs, assigning special education providers, and ensuring compliance with

federal and state special education laws.

50.     The DOE is a LEA for IDEA purposes and a recipient of federal financial

assistance for Section 504 purposes.

51.     When the "DOE" is referenced throughout, the term DOE refers individually to

Defendant DOE, as well as collectively to the Defendants.

52.     Defendant THE CITY OF NEW YORK ("City") is a municipal corporation and

political subdivision of the State of New York.

53.     The City exercises budgetary, fiscal, and operational control over the BOE and

DOE, and is responsible for the funding and implementation of special education and

related services within the New York City school system.

---

[4] Pursuant to amendments to the statute, the Legislature increased the number of panel
members from 15 to 23 and recently increased the number of member again. N.Y. Educ.
Law §§ 2590-b, -g.

54.     Defendant CHANCELLOR MELISSA AVILÉS-RAMOS, in her official capacity as Chancellor of New York City Public Schools, is the chief executive officer of the BOE and DOE.

55.     She is responsible for ensuring compliance with state and federal special education mandates, including developing, implementing, and overseeing policies that affect special education services.

56.     The Chancellor is sued in her official capacity only.

57.     Collectively, the BOE, DOE, the City, and the Chancellor are responsible— jointly and severally—for providing IDEA services and for implementing IESP services pursuant to the IDEA Section 1415 and New York Education Law § 3602-c.

58.     The City is a municipality subject to suit under 42 U.S.C. § 1983.

59.     Upon information and belief, Defendant DOE has responsibility for developing policies, in conjunction with Defendant Chancellor and Defendant BOE with respect to the administration and operation of the public schools in Defendant City, including programs and services for students with disabilities. N.Y. Educ. Law § 2590-g.

60.     All Defendants jointly and/or individually constitute the LEA under the IDEA and New York State law.

61.     All Defendants jointly and/or individually are recipients of federal financial assistance and therefore are bound by federal statutory and regulatory obligations, including under the IDEA.

62.     Courts in this District and Circuit have repeatedly recognized federal subject matter jurisdiction over disputes arising from IDEA impartial hearing and SRO decisions, and this case is properly before the Court.

63.     Each Defendant acts under color of state law and is liable under 42 U.S.C. § 1983 for policies, customs, or deliberate indifference that result in violations of federal rights.

64.     At all times relevant to this action, Defendants exercised control over the policies, implementation practices, and administrative procedures that resulted in the systemic denial of equitable services to M.G. and thousands of similarly situated students.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

65.     Plaintiff has fully exhausted all administrative procedures required by the IDEA, 20 U.S.C. § 1415(f)–(h), and New York Education Law § 4404, as a prerequisite to bringing this civil action.

66.     On May 14, 2024, Plaintiff filed a Due Process Complaint ("DPC") with the New York City Impartial Hearing Office alleging that the DOE failed to provide M.G. with mandated equitable services for the 2023–2024 school year pursuant to his IESP. 273143 Moshe Guttman DPC (1).

67.     An impartial due process hearing was convened on June 27, 2024, before Impartial Hearing Officer Joshua Pal. At that hearing, the DOE appeared but failed to demonstrate that it had implemented the IESP or provided M.G. with the mandated SETSS services.

68.     At the June 27, 2024 hearing, the IHO improperly excluded Parent Exhibits H and I on procedural grounds, despite their relevance to the appropriateness of the unilateral SETSS services. The exclusion of these exhibits resulted in an incomplete record and an adverse decision against Plaintiff.

69.     On August 2024, the IHO issued a FOFD denying relief under Prong II of the
Burlington/Carter standard, finding that Plaintiff failed to demonstrate the
appropriateness of unilateral services.

70.     Plaintiff timely appealed to the State Review Office. On November 12, 2024, in
SRO Decision No. 24-346, the SRO reversed the IHO and remanded the matter for
admission of Parent Exhibits H and I, directing the IHO to reconsider Prong II after
including those documents in the record.

71.     A remand hearing was held on December 4, 2024. Plaintiff appeared; the DOE
did not appear despite notice. The IHO admitted Parent Exhibits H and I pursuant to the
SRO's directive.

72.     Despite the DOE's non-appearance and the uncontroverted evidence introduced
on remand, the IHO once again found the unilateral placement inappropriate and denied
relief in a new Findings of Fact and Decision dated December 20, 2024. 273143 FOFD
post remand.

73.     Plaintiff again timely appealed to the State Review Office. On January 2025,
Plaintiff filed a Request for Review challenging the IHO's errors of law and fact. See
RFR.

74.     On July 25, 2025, the State Review Officer issued SRO Decision No. 25-062,
which affirmed the IHO's denial of relief. The SRO decision constitutes the final
administrative decision under the IDEA and New York Education Law § 4404(2). See
25-062.

75.    Plaintiff is therefore a party aggrieved by the final administrative decision within the meaning of 20 U.S.C. § 1415(i)(2)(A), and this action for judicial review is properly before this Court.

76.    Moreover, Plaintiffs are not required to further exhaust administrative remedies.

77.    Plaintiffs have already exhausted their IDEA remedies concerning the applicable school years.

78.    Plaintiffs are not required to further exhaust administrative remedies with respect to the claims filed under Section 504, and Section 1983, the U.S. Constitution or the New York Constitution.

79.

80.    Neither the IHO nor SRO has jurisdiction under New York law to hear claims pursuant to 42 U.S.C. §1983, though these claims were raised.

81.    Neither the IHO nor SRO assumed jurisdiction of or ruled upon Section 504 claims.

82.    State law only vests the SROs and the IHOs with authority over IDEA and New York Education law claims.

83.    The IHOs and SROs do not have jurisdiction to hear any systemic claims.

84.    Exhaustion of claims is not necessary as Plaintiffs make systemic claims over which there is no jurisdiction.

85.    Further exhaustion is not required because Plaintiffs require discovery to prove claims alleged.

86.    Plaintiffs are not required to exhaust remedies further due to significant backlog in the hearing system, which has already caused Plaintiffs to lose almost two years.

87.    Exhaustion is not required because Plaintiffs seek damages.

88.    The Plaintiffs did not receive adequate notice of their due process rights and, as such, were not required to exhaust their remedies in the first instance.

89.    All conditions precedent to filing this action have been satisfied or waived.

## FACTUAL BACKGROUND

90.    M.G. is a school-age child with a disability entitled to receive special education and related services under the IDEA and New York Education Law §§ 3602-c and 4401(1).

91.    M.G. has documented weaknesses in phonological processing, decoding, fluency, working memory, attention, and expressive language, requiring specialized structured literacy instruction consistent with research-based methodologies used for students with language-based learning disabilities.

92.    The October 21, 2022 IESP recommended 4 periods SETSS in Yiddish and 1 period counseling, noting M.G.'s difficulty with decoding words, blending sounds, reading fluently, and applying phonics rules. The March 27, 2024 IESP reaffirmed these needs and recommended an identical mandate.

93.    The IESP goals show that M.G. required systematic, explicit instruction in phonological awareness, decoding, sight-word recognition, vocabulary, inferencing, and reading comprehension — all targeted areas addressed by the unilateral SETSS provider.

B. DOE's Failure to Implement the IESP and Systemic Non-Compliance

94.    The DOE has never implemented any portion of M.G.'s mandated SETSS or counseling services for the 2022–2023 or 2023–2024 school years, despite Plaintiff's written notification and repeated outreach.

95.     This failure is not an isolated error but reflects the DOE's systemic pattern—widely documented by SRO decisions, impartial hearing findings, parent advocacy organizations, and federal litigation—of failing to assign SETSS providers for dually-enrolled nonpublic school students across New York City.

96.     Multiple SRO decisions, including Appeal Nos. 23-140, 23-162, 23-033, and 21-096, recognize that the DOE routinely ignores its obligation to implement IESPs, leaving parents with no option but to secure services privately.

97.     In this case, DOE's systemic failures are evidenced by:

a. No provider assignment after the October 2022 IESP;

b. No provider assignment after Plaintiff's May 2023 notice requesting equitable services;

c. No provider assignment after the March 2024 IESP;

d. No response to Plaintiff's communications warning DOE of the lack of implementation;

e. DOE's nonappearance at the December 4, 2024 remand hearing; and

f. DOE's failure to present evidence or challenge progress, even though the burden for Prong II rested on the parent.

98.     DOE's nonappearance at the remand hearing (Dec. 4, 2024 transcript at pp. 2–3) confirms the structural dysfunction repeatedly documented across impartial hearings: the DOE fails to send counsel, fails to respond to emails, and fails to participate in hearings involving its own noncompliance.

99.     DOE's failure to appear deprived both the IHO and the SRO of any basis to deny relief on the grounds of disputed facts.

C. Plaintiff's Unilateral Procurement of SETSS and M.G.'s Documented Progress

100.    After months of DOE inaction, Plaintiff secured SETSS from Succeed Support Services, LLC beginning September 13, 2023 at the rate of $215/hour. The November 1, 2023 contract states M.G. would receive the same 4 weekly hours recommended by the IESP.

101.    Parent Exhibit H (Educational Supervisor Affidavit) demonstrates that M.G.:

a.      Entered SETSS with significant difficulty decoding CVC and CVCC words;

b.      Struggled with letter-sound correspondence and blending;

c.      Exhibited reduced stamina and frustration when reading;

d.      Had difficulty writing complete sentences independently;

e.      Benefited from multisensory phonics instruction provided in Yiddish.

f.      Exhibit H further describes that the SETSS provider utilized structured, sequential literacy instruction addressing M.G.'s exact IESP goals — including phonics review, sound-symbol mapping, segmenting, blending, fluency drills, and guided reading.

g.      Parent Exhibit I (Progress Reports) documents measurable improvement month-by-month, including:

h.      Increased decoding accuracy with short vowel sounds;

i.      Improved fluency with consonant blends and diagraphs;

j.      Expanded sight-word bank, from fewer than 10 words to over 40;

k.      Improved reading stamina, increasing from 3–4 minutes to over 10;

l.      Improved writing, progressing from one-word responses to full sentences;

m.      Improved confidence, with reduced frustration and increased willingness to read aloud.

102.    The DOE provided no evidence disputing appropriateness or progress, and presented no cross-examination of the supervisor affidavit (Transcript, pp. 6–7). The IHO acknowledged no DOE participation.

103.    The transcript confirms the IHO recognized:

a.    The DOE's failure to appear (pp. 2–3);

b.    That Parent Exhibits H and I were required to be admitted under SRO order (pp. 4–5);

c.    That the supervisor was unavailable due to maternity leave, but DOE forfeited its right to cross-examine (pp. 5–7);

d.    That there would be no cross-examination at all, due to DOE's absence (pp. 7–8).

104.    Despite all evidence being unrebutted, the IHO rejected progress as insufficient — applying a legally improper standard requiring that the unilateral services match the IESP exactly, notwithstanding Carter and subsequent SRO precedent holding that parents are not held to the district's standards.

D. Administrative Proceedings (Expanded with Systemic Elements)

1. The May 14, 2024 DPC

105.    Plaintiff filed a Due Process Complaint asserting DOE's failure to implement M.G.'s IESP and seeking funding for unilateral SETSS. The DPC noted DOE's systematic lack of provider assignment and failure to follow § 3602-c.

2. June 27, 2024 Hearing

106.    DOE appeared but conceded Prong I by failing to dispute non-implementation.

19

107.    The IHO improperly excluded Exhibits H and I — a systemic problem that has been repeatedly reversed by the SRO in numerous cases due to IHO misapplication of disclosure rules.

3. SRO Reversal and Remand

108.    In SRO 24-346, the SRO reversed the IHO, finding the record incomplete due to the exclusion of H and I and requiring their admission.

109.    The SRO's remand decision mirrors a pattern:

110.    IHO Pal has been reversed multiple times for similar errors (as noted in your Request for Review).

111.    DOE routinely benefits from structural deficiencies in the hearing system that prejudice parents.

112.    DOE failed to appear despite multiple attempts by the IHO to reach district counsel (Transcript pp. 2–3). The IHO acknowledged procedural emails sent to DOE.

113.    The IHO admitted H and I and stated the record would be considered complete.

114.    The IHO acknowledged that the supervisor could not testify due to maternity leave and stated DOE had lost its opportunity to cross-examine due to its default.

5. December 20, 2024 FOFD

115.    The IHO denied relief again, repeating the same legal errors criticized by the SRO on the prior appeal.

116.    The IHO faulted the parent for not providing "group SETSS," despite:

a.    DOE's legal obligation to provide group services;

b.    DOE's systemic failure to assign providers;

c.      The SRO's repeated holdings that unilateral placements may exceed the IESP

mandate and still be appropriate.

6.      May 2025 SRO Decision (25-062)

117.    In the final administrative decision, the SRO repeated the IHO's errors:

118.    This final decision is contrary to law and fact and must be reversed.

## LEGAL STANDARDS

A. Judicial Review Under the IDEA

119.    Actions brought under the IDEA are subject to a "modified de novo" standard of

review. M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 240 (2d Cir. 2012). The reviewing

court must independently determine whether the administrative record establishes that the

student was denied the services to which they were entitled and whether the

administrative decisions are supported by a preponderance of the evidence.

120.    Although courts give "due weight" to administrative proceedings, particularly to

SRO decisions, such deference is warranted only when the SRO's reasoning is "thorough,

careful, and well-reasoned." Deference is unwarranted where, as here, the SRO:

a. adopts an incorrect legal standard;

b. applies an erroneous burden of proof;

c. ignores uncontroverted evidence;

d. fails to address critical issues raised on appeal; or

e. endorses or repeats IHO errors without independent analysis.

121.    Where the SRO's findings are not supported by the record or are based on

misapplications of law, the district court must reject them and conduct an independent

review.

B. The Burlington/Carter Framework Does Not Apply

122.    The SRO has repeatedly held that:

a.      Parents are not held to the same LRE or procedural standards as districts;

b.      One-to-one services may be appropriate even when the IESP recommends group services;

c.      Services need not perfectly replicate the IESP;

123.    A unilateral placement may provide more support than required without being inappropriate.

124.    In equitable services cases, the DOE's failure to implement an IESP is incorrectly treated as a failure to provide a FAPE-equivalent, and the parent's "unilateral" procurement of SETSS is wrongly analyzed as if it were a unilateral placement under the IDEA.

C. Legal Standards Governing Equitable Services Under N.Y. Educ. Law § 3602-c

125.    Section 3602-c entitles dually-enrolled nonpublic school students to receive "equitable services" at public expense, including SETSS and counseling mandated by an IESP.

126.    DOE must:

a. develop an IESP reflecting the student's needs;

b. assign appropriately certified providers;

c. ensure implementation of all mandated services.

127.    When DOE fails to implement an IESP, it is responsible for funding services secured by the parent. SRO decisions have consistently held that DOE cannot avoid this obligation by asserting:

22

a.      staffing shortages,

b.      contractual disputes,

c.      or burden shifting onto parents.

128.    The purpose of § 3602-c is to ensure nonpublic school students with disabilities receive timely, appropriate services irrespective of placement.

D. Standards for § 1983 Claims Against DOE, BOE, the City, and the Chancellor

129.    Under 42 U.S.C. § 1983, a municipality is liable when a constitutional or federal statutory violation results from:

a.      a formal policy,

b.      a widespread custom or practice, or

c.      deliberate indifference in training, supervision, or policymaking.

*Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978).

130.    DOE, BOE, and the City may be held liable under § 1983 for systemic IDEA and § 3602-c violations.

131.    Courts in this District recognize § 1983 claims where plaintiffs allege:

a.      chronic failure to assign providers,

b.      systemic non-implementation of IESPs,

c.      administrative dysfunction resulting in widespread IDEA violations.

132.    Plaintiff alleges that Defendants' systemic practices—including non-assignment of providers, non-appearance at hearings, rejection of unrebutted progress evidence, and repeated use of unlawful heightened standards—constitute municipal policies or customs that violate federal rights under IDEA, Section 504, and the Fourteenth Amendment.

**The Administrative Decision-makers Applied Incorrect Legal Standards**

23

A. The IHO and SRO Applied Incorrect Legal Standards Under Burlington/Carter

133.    The IHO and SRO decisions must be reversed because both applied a legally

impermissible heightened standard in evaluating the appropriateness of the unilateral

SETSS services.

134.    Although Carter does not apply, even if it did, parents are not required to provide

services identical to those recommended by the district. 510 U.S. at 14.

135.    Yet both the IHO and SRO incorrectly held that Plaintiff had to:

a. provide group SETSS rather than 1:1;

b. adhere rigidly to IESP goals and methods;

c. show certification identical to district criteria;

d. reproduce DOE service delivery models; and

e. demonstrate compliance with formal regulatory requirements applicable only to public

agencies.

a.    SRO guidance clarifying that private services may exceed, differ from, or be more

restrictive than the IESP recommendation without being inappropriate.

136.    Courts have repeatedly held that 1:1 instruction is not only permissible but often

beneficial for students with M.G.'s profile. The IHO's rejection of 1:1 SETSS as a basis

for denial is therefore legally indefensible.

B. The IHO and SRO Ignored Uncontroverted Evidence of Progress

137.    Parent Exhibits H and I — initially excluded but later ordered admitted by the

SRO — provide qualitative evidence of meaningful progress, including:

a.    improved decoding accuracy;

b.    increased fluency;

c.       measurable growth in sight-word recognition;

d.       extended reading stamina;

e.       improved writing fluency;

f.       greater academic confidence.

138.   This progress directly satisfied the Prong II standard of "demonstrable improvement" and "educational benefit," even assuming that this standard were the appropriate one.

139.   The DOE:

a.       failed to appear;

b.       conducted no cross-examination;

c.       presented no rebuttal evidence;

d.       failed to dispute progress;

e.       and defaulted entirely at the remand hearing.(Dec. 4, 2024 Tr. at 2–3).

140.   The IHO even acknowledged: "The District is not present and will not be cross-examining the parent's evidence." (Dec. 4, 2024 Tr. at 5–7).

141.   Yet both the IHO and SRO dismissed the only evidence in the record — the parent's evidence without legal basis.

142.   Administrative fact-finders may not reject uncontroverted evidence based on subjective preference or speculation.

143.   The SRO's failure to address this fundamental error renders its decision "insufficiently reasoned" and undeserving of deference.

C. The IHO and SRO Improperly Imported Prong III (Equities) Into Prong II

144.    The IHO reasoned that unilateral SETSS was inappropriate because the provider contract was:

a.    signed after the school year began;

b.    not sufficiently detailed; or

c.    not identical to DOE's format.

145.    These considerations are equitable factors, not appropriateness factors.

146.    The Second Circuit holds that contract terms, timing of signatures, invoice structure, or financial exposure do not determine educational appropriateness.

147.    Equitable considerations occupy Prong III, not Prong II.

148.    By allowing contract formalities to override educational evidence, both IHO and SRO applied the wrong legal framework.

149.    The SRO compounded the error by effectively endorsing the IHO's misapplication without addressing the doctrinal distinction.

D. The IHO and SRO Failed to Address DOE's Systemic Non-Implementation of the IESP

150.    DOE's failure to assign a SETSS provider is undisputed. DOE defaulted at the remand hearing. DOE presented no rebuttal evidence. DOE provided no explanation for years of non-implementation.

151.    Despite this, the IHO and SRO:

a.    treated the DOE's systemic noncompliance as irrelevant;

b.    imposed heightened burdens on Plaintiff;

c.    and ignored governing § 3602-c precedent holding that DOE's non-implementation triggers the right to unilateral services.

152.    This contradicts SRO decisions finding:

a.    the DOE "cannot be absolved of its statutory obligation" by transferring

implementation burdens to parents;

b.    parents "may be afforded some leeway" when DOE fails to provide group

services;

c.    DOE's longstanding failure to implement equitable SETSS is a recurring issue.

153.    The administrative record, and the SRO's own decision history, reflect a systemic

pattern of DOE failures that the IHO and SRO ignored in violation of federal law and §

3602-c.

E. The IHO and SRO Repeated Procedural Errors Contrary to the SRO's Own Remand

Order

154.    The SRO's initial remand (SRO 24-346) required the IHO to:

a.    admit Parent Exhibits H and I;

b.    evaluate their substantive content; and

c.    reconsider Prong II based on the full record.

155.    Instead, the IHO:

a.    admitted the exhibits formally,

b.    but refused to consider their educational content meaningfully;

c.    repeated the same legal errors; and

d.    dismissed progress based on irrelevant factors.

156.    The SRO then affirmed this defective reevaluation.

 F. The Final Administrative Decision Is Unsupported by the Record and Must Be

Reversed

157.    Both administrative decisions rest on:

a.    incorrect legal standards;

b.    rejection of uncontroverted evidence;

c.    DOE's default being improperly ignored;

d.    no evidence contradicting parental evidence.

158.    This Court must therefore reverse the SRO decision, find the unilateral SETSS services appropriate, and order DOE to fund the services provided to M.G. at the agreed-upon rate.

G. The IHO and SRO Improperly Required the Parent to Prove "Access to the General Education Curriculum" and Misapplied LRE

159.    The IHO and SRO further erred by concluding that Plaintiff failed to prove that the parents' SETSS provided "access to the general education curriculum." This standard applies to school districts, not parents. (parents are not required to meet the IDEA's curriculum, certification, or procedural requirements).

160.    A self-help procurement of services need only be "reasonably calculated to enable the child to receive educational benefit," not aligned to a state curricular framework.

161.    The IHO's reliance on failure to show "curricular access" is therefore a substantive legal error and imposes a requirement the courts have rejected.

162.    The IHO and SRO also suggested that M.G. required a special class to receive services in a "group," implying that the 1:1 SETSS was inappropriate because it was not group instruction.

163.    This reasoning is legally incorrect because:

a. Parents are not required to choose the least restrictive setting — only school districts are.

b. Unilateral determinations of 1:1 services may be more restrictive than district recommendations and still be appropriate.

c. DOE never offered M.G. a special class placement and cannot use its own failure to justify denial of relief.

d. Requiring Plaintiff to remove M.G. from general education into a special class contradicts the fundamental intent of § 3602-c, which allows nonpublic school students to remain in their chosen setting while receiving specialized support.

164.    The IHO's and SRO's reliance on "group structure" and "curricular access" demonstrates a fundamental misapplication of IDEA standards, warranting reversal.

**COUNT I: VIOLATIONS OF THE IDEA, 20 U.S.C. §§ 1400 et seq.(Failure to Implement IESP; Failure to Provide Mandated Equitable Services; Failure to Provide FAPE-Equivalent Services to a Dually-Enrolled Student)**

165.    Plaintiff repeats and realleges all prior paragraphs.

166.    Under 20 U.S.C. § 1412(a)(10)(A) and N.Y. Educ. Law § 3602-c, M.G. was entitled to receive equitable SETSS and counseling services for the 2023–2024 school year.

167.    Defendants failed to implement M.G.'s IESP for the entire school year despite:

a. parental requests;

b. statutory obligations;

c. repeated reminders; and

d. knowledge of M.G.'s needs.

168.    Defendants' failure to implement the IESP constitutes a violation of the IDEA's requirement to provide appropriate special education services.

169.    The IHO and SRO improperly denied reimbursement for unilateral SETSS services despite:

a.    DOE's conceded failure to provide services (Prong I),

b.    unrebutted evidence of appropriateness (Prong II), and

c.    equities overwhelmingly favoring Plaintiff (Prong III).

170.    These legal errors violate the IDEA, 34 C.F.R. § 300.148, and controlling Supreme Court and Second Circuit precedent

171.    As a result, M.G. was denied educational benefit, and Plaintiff suffered financial harm.

172.    The IHO and SRO erroneously required Plaintiff to demonstrate that unilateral SETSS "provided access to the general education curriculum," a requirement applicable only to school districts, not parents. This error contradicts Carter, Frank G., Gagliardo, and C.F.

173.    The IHO and SRO further erred by suggesting that M.G. should have been placed in a special class to receive group instruction. This reasoning misapplies the LRE requirement to a parent's unilateral placement and contradicts the purpose of § 3602-c, which exists to allow nonpublic school students to remain in their general education placements while receiving specialized support.

174.    These errors require reversal of the administrative decisions.

**COUNT II VIOLATION OF N.Y. EDUCATION LAW § 3602-c(Failure to Provide Equitable Services to Dually-Enrolled Student)**

175.    Plaintiff repeats and realleges all prior paragraphs.

176.    Section 3602-c mandates that the DOE develop and implement an IESP providing equitable services to dually-enrolled nonpublic school students.

177.    DOE failed to:

a.    assign a SETSS provider;

b.    implement any portion of the IESP;

c.    provide counseling;

d.    communicate with Plaintiff; or

e.    respond to parental outreach.

178.    DOE's failure was total, continuous, and without any legitimate justification.

179.    Under § 3602-c, DOE's failure required Plaintiff to secure private SETSS, and DOE is responsible for the reasonable cost of those services.

180.    The IHO and SRO decisions disregarded § 3602-c's statutory mandate and must be reversed.

**COUNT III VIOLATION OF SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794 (Systemic Non-Implementation of Services and Discriminatory Denial of Equal Access)**

181.    Plaintiff repeats and realleges all prior paragraphs.

182.    Plaintiff M.G. is an individual with disabilities under Section 504 because he has a physical or mental impairment that results in a substantial impediment of a major life activity. 29 U.S.C. §705(20)(B).

183.    Defendants are subject to Section 504 because they receive federal financial assistance.

184.    Plaintiff parents and Plaintiff disabled Student have been harmed by Defendants' failures to implement and provide FAPE to M.G.. over the course of multiple school years in violation of Section 504.

185.    Defendants have been on notice of the systematic unlawful noncompliance with administrative orders but have done nothing to effectively remedy it. In failing to effectively address the noncompliance with administrative orders Defendants have acted in bad faith and exercised gross misjudgment and have acted with deliberate or reckless indifference to the Plaintiffs' federally protected rights.

186.    Plaintiffs' rights under Section 504 are enforceable under 29 USC § 794(a), as well as the Court's equitable powers.

187.    Plaintiffs rights under Section 504 are also enforceable under 42 U.S.C.§ 1983.

188.    Defendants discriminated against Plaintiffs under Section 504 by, *inter alia*, denying M.G. reasonable accommodations, adopting systemic policies, procedures and practices that violate M.G.'s rights under the IDEA and New York State law, and engaging in widespread and pervasive violations of the IDEA and New York State Education law.

189.    Defendants discriminated against M.G. under Section 504 by, *inter alia*, committing extensive, repeated, gross, knowing, and reckless violations of multiple provisions of the IDEA and New York State law, which is incorporated by reference into the IDEA.

190.    As a result of these violations, Plaintiffs are entitled to the relief requested below.

191.    Defendants' persistent and systemic refusal to assign SETSS providers to nonpublic school students constitutes disability-based discrimination by failing to provide meaningful access to mandated services.

192.    Defendants' actions show deliberate indifference to M.G.'s federally protected rights, satisfying the intent requirement for compensatory damages under Section 504.

**COUNT IV. VIOLATION OF 42 U.S.C. § 1983 (Systemic IDEA / § 3602-c Violations; Monell Liability)**

193.    Plaintiff repeats and realleges all prior paragraphs.

194.    Defendants DOE, BOE, the City, and the Chancellor acted under color of state law.

195.    Defendants maintained and enforced policies, customs, or practices that caused widespread deprivation of IDEA rights across New York City, including:

a. chronic non-implementation of IESPs;

b. failure to assign SETSS providers to thousands of students;

c. systemic non-responsiveness to parent outreach;

d. habitual defaulting at impartial hearings;

e. reliance on procedural technicalities to avoid paying for services;

f. repeated misuse of Prong II to hold parents to improper standards;

g. routine refusal to fund unilateral services in § 3602-c cases;

h. systemic exclusion or minimization of parent evidence; and

i. persistent administrative dysfunction acknowledged in numerous SRO decisions.

196.    These failures reflect a municipal policy or custom, not isolated error.

197. Defendants were deliberately indifferent to the known consequences of these practices, which created a foreseeable risk that children like M.G. would not receive mandated services.

198. Defendants' systemic violations were the moving force behind Plaintiff's injuries.

199. As a result, Plaintiff is entitled to declaratory and injunctive relief, reimbursement of tuition/SETSS expenses, compensatory damages, and attorneys' fees.

200. As part of their systemic practices, Defendants' administrative hearing officers routinely impose:

a.     DOE curriculum-access standards,

b.     LRE requirements,

c.     teacher certification standards,

d.     DOE instructional methodologies,

e.     and IEP/IESP procedural requirements on parents seeking equitable services, despite clear and controlling law that these standards apply only to school districts, not parents.

201. This practice constitutes a widespread custom and policy that results in repeated violations of IDEA and § 3602-c rights across NYC.

202. Defendants are therefore liable under Monell.

**COUNT V ATTORNEYS' FEES AND COSTS (20 U.S.C. § 1415(i)(3))**

203. Plaintiff repeats and realleges all prior paragraphs.

204. Plaintiff is the prevailing party or will be the prevailing party upon reversal of the administrative decisions.

205. Plaintiff is entitled to attorneys' fees and costs.

34

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff B.G., individually and on behalf of M.G., respectfully requests that this Court enter judgment in her favor and against Defendants The Board of Education of the City School District of the City of New York; the New York City Department of Education; the City of New York; and Chancellor Melissa Avilés-Ramos, in her official capacity, and award the following relief:

1.      Reverse the Findings of Fact and Decision dated December 20, 2024 issued by Impartial Hearing Officer Joshua Pal and the SRO Decision No. 25-062, and find both administrative decisions contrary to law and fact.

2.      Declare that Defendants failed to implement M.G.'s IESP and failed to provide M.G. with the equitable services mandated by the IDEA and N.Y. Educ. Law § 3602-c for the 2023–2024 school year.

3.      Declare that the self-help procurement of SETSS services obtained by Plaintiff from Succeed Support Services, LLC were appropriate and were reasonably calculated to enable M.G. to receive meaningful educational benefit.

4.      Order Defendants to fund the entire cost of all SETSS services delivered to M.G. during the 2023–2024 school year at the enhanced contracted rate of $215 per hour, payable directly to the provider or as otherwise directed by Plaintiff.

5.      In the alternative, order compensatory equitable services, including additional hours of SETSS or other relief necessary to place M.G. in the position he would have been in but for Defendants' failure to implement the IESP.

6.      Declare that Defendants' systemic policies and practices — including chronic non-implementation of IESPs for dually-enrolled students, failure to assign SETSS

providers, and imposition of improper curriculum-access and LRE requirements on parents' self-help remedies violate the IDEA, Section 504, and 42 U.S.C. § 1983.

7.      Permanently enjoin Defendants from continuing practices that deprive nonpublic school students of equitable services under the IDEA and N.Y. Educ. Law § 3602-c, including systemic non-assignment of SETSS providers and routine default at impartial hearings.

8.      Award Plaintiff reasonable attorneys' fees, expenses, and costs pursuant to 20 U.S.C. § 1415(i)(3), 29 U.S.C. § 794a(b), and 42 U.S.C. § 1988 for all administrative proceedings costs and expenses and reasonable attorneys' fees, expenses, and costs for this litigation.

9.      Grant such other and further relief as the Court deems just, proper, and equitable.

DATED:      New York, New York
            November 25, 2025

                                        Respectfully submitted,

                    THE LAW OFFICE OF LAURA D. BARBIERI, PLLC

                    BY:      *Laura Dawn Barbieri*
                            Laura Dawn Barbieri
                            Attorneys for Plaintiff B.G. and M.G.
                            115 W 73rd St., Ste. 1B
                            New York, NY 10023
                            (914) 819-3387
                            Laura@LDBarbLaw.com

TO:     NYC Corporation Counsel
        New York City Law Department
        100 Church Street
        New York, NY 10007